# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH NEALE, JR., <br><br> Plaintiff, <br><br> v. <br><br> STU SHERMAN, et al., <br><br> Defendants. | 1:18-cv-00342-DAD-BAM (PC) <br><br> FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF ACTION FOR FAILURE TO STATE A CLAIM <br><br> (ECF No. 13) <br><br> **FOURTEEN-DAY DEADLINE** |

### I. Screening Requirement and Standard

Plaintiff Joseph Neale, Jr. ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. On May 31, 2018, the Court screened Plaintiff's complaint and granted him leave to amend. (ECF No. 8.) Plaintiff's first amended complaint, filed on July 30, 2018, is currently before the Court for screening. (ECF No. 13.)

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

**II.      Plaintiff's Allegations**

Plaintiff is a state prisoner currently housed at the California Substance Abuse Treatment Facility ("CSATF") in Corcoran, California, where the events in the complaint are alleged to have occurred. Plaintiff names the following defendants: (1) Dr. N. Kandkhorova; (2) Dr. Nkiruka Akabike; (3) Chief Medical Executive G. Ugwueze; (4) Chief Executive Officer C. Cryer; and (5) Deputy Director of CCHCS J. Lewis. Plaintiff alleges that defendants have either violated his rights under the Equal Protection Clause of the Fourteenth Amendment or have subjected him to cruel and unusual punishment in violation of the Eighth Amendment.

In relevant part, Plaintiff alleges that he is a 68-year-old mobility impaired Black citizen with other infirmities. He reportedly has been complaining about severe sciatic, arthritis and other acute and chronic pain since he arrived at CSATF in June 2013. During the five-year

period of incarceration, his medical treatment and diagnosis have been inconsistent and unpredictable because he has had multiple primary care providers ("PCPs"), including Defendants Kandkhorova and Akabike. In the last four years, Plaintiff claims that he has found it necessary to write extensive statements to his last three primary care providers complaining about the severity of his pain and requesting specific types of medical equipment to ease that pain. Plaintiff also has filed a CDCR HC medical appeal to compel Defendant Kandkhorova "to conform her PCP chronic care treatment to CDCR's CPHCS Pain Management Guidelines." (ECF No. 13 at pp. 5-6.)

Plaintiff asserts that he has written statements to his PCPs about his pain and requests for medical equipment. These statements include an informal appeal to Physician Assistant C. Ogbuehi in August 2014, an informal appeal to Defendant Kandkhorova in October 2014, and an informal appeal to Defendant Akabike in July 2015. Plaintiff's statements were scanned into his records. In addition, a Medical Treatment Refusal Statement against Defendant Kandkhorova dated January 21, 2015, was scanned into the medical records. In an appeal decision, Chief Nurse Executive M. Fritz stated that Plaintiff's medical records provided with his documents were scanned into his eUHR as requested.

In a health care appeal that Plaintiff submitted on December 1, 2014, Plaintiff requested, in part, that Defendant Kandkhorova "be told to conform her PCP chronic care treatment to CDCR's CPHCS Pain Management Guidelines." (ECF No. 13 at p. 6.) Specifically, Plaintiff explained that Defendant Kandkhorova claimed that there was no objective evidence for Plaintiff's chronic pain and refused to refer him to "P&T, MAR, and/or NP committees; or to outside specialists" and she "refused to consider the possible psychiatric source of [his] pain via a Somatoform Disorder; nor referred [him] to Mental Health." (ECF No. 13 at pp. 6-7.)

After receiving the appeal decision at the first level of review, Plaintiff's appeal was partially granted, and Plaintiff understood that he would be referred to mental health for psychological evaluation. Plaintiff was hopeful and understood that a psychiatric evaluation would be scheduled by Defendant Kandkhorova, but the first level appeal decision was reversed

at the second level and Director's level of review. Plaintiff was never scheduled for a psychiatric evaluation.

Plaintiff alleges that Defendants Ugwueze, Cryer and Lewis joined Defendant Kandkhorova in demonstrating deliberate indifference to Plaintiff's articulations of severe pain. Defendant Akabike joined with them after becoming Plaintiff's PCP. Shortly after his second appointment with Defendant Akabike on January 4, 2016, Plaintiff submitted a CDCR 7362 requesting that she schedule a psychiatric appointment for Plaintiff with mental health to determine if there was a psychological component to the pain that he had been complaining about for more than a decade. Defendant Akabike did not refer Plaintiff to mental health.

Plaintiff claims that defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. Plaintiff further claims that they were deliberately indifferent to his pleas for help and failed to follow their own Pain Management Guidelines.

Additionally, Plaintiff claims that Defendant Kandkhorova also violated Plaintiff's Equal Protection rights because he discovered that she makes distinctions and shows bias in her medical treatment based on an inmate's race. Plaintiff asserts that Defendant Kandkhorova "appears to be very prejudicial and shows partiality toward her own kind." (ECF No. 13 at p.8.)

On September 25, 2014, when Defendant Kandkhorova first told Plaintiff that she was taking his wheelchair, Plaintiff asked to approve the use of a seated walker. Defendant Kandkhorova denied Plaintiff's request, but she concurrently was willing to approve the use of a seated walker for a White inmate.

After the denial of the walker, Plaintiff reports that he was approached by Charles Parle, a White inmate, who told Plaintiff that he had heard about Plaintiff's situation with Defendant Kandkhorova. Inmate Parle also told Plaintiff that at his last PCP appointment with Defendant Kandkhorova, she twice offered him a seated walker during the same PCP appointment. Inmate Parle declined the walker because he did not need it and his cane was sufficient. Inmate Parle reportedly was shocked to hear that Defendant Kandkhorova denied Plaintiff's request because his mobility impairment was worse.

Plaintiff argues that there are prejudices and biases in Defendant Kandkhorova's medical treatment practice. She reportedly was willing to offer a White inmate a seated walker, unsolicited, but denied a Black inmate the same seated walker when he asked for the same consideration.

Plaintiff further asserts that he has an unseated walker, but contends that a seated walker would allow him to move around and perform chores, academic pursuits and other activities in an independent and self-reliant manner. Currently, Plaintiff is assigned a Care Giver to carry his meals to and from the dining hall table and other things. Plaintiff claims that a seated walker would enable him to perform all of these activities independently and would allow him to rest periodically as he walks around the yard. Plaintiff asserts that he does not go to the yard for exercise and socializing because he frequently must rest because of his mobility impairment, sciatic condition and other ailments. Plaintiff further asserts that benches, stools, and bleachers are segregated by race, ethic, and/or gang affiliation, so he is unable to sit down and rest without risk of being assaulted for violating unwritten inmate rules of conduct.

In addition to a seated walker, Plaintiff also requests a seat cushion because the stools in the dayroom are metal and the benches are hardwood. Plaintiff contends that his lower back, thighs, hips and groin area are in a state of constant physical discomfort from the hard surfaces. Plaintiff seldom goes to the dayroom to socialize with fellow inmates, and the lack of companionship and fellowship adversely affect him emotionally and psychologically and intensifies his pain. Plaintiff explains that most of his dorm time is spent sitting or lying on his bed. When he performs legal work, or writes letters to his family and friends, he completes those tasks sitting awkwardly on his bed.

Plaintiff also requests a double (extra) mattress administrative chrono. He reportedly has had a double mattress medical chrono since he entered the prison system in 2001, but under a new policy, correctional officers can now deny an extra mattress at their discretion. Plaintiff asserts that he cannot sleep restfully without a double mattress.

As relief, Plaintiff asks that the Court order medical staff at CSATF to provide him with the following items: (1) a seated walker with brakes, a cushioned back brace, and a basket; (2) a

seat cushion; and (3) a double (extra) mattress chrono. Plaintiff also requests compensatory and punitive damages.

### III. Discussion

#### A. Linkage Requirement

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff fails to link Defendants Ugwueze, Cryer and Lewis to a deprivation of his rights. Instead, Plaintiff makes a conclusory assertion that they were deliberately indifferent to his medical needs, but provides no factual allegations demonstrating that they subjected Plaintiff to a deprivation of his rights. Further, to the extent Plaintiff seeks to hold these defendants liable based on their supervisory roles, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. Iqbal, 556 U.S. at 676−77; Simmons v. Navajo Cty., Ariz., 609 F.3d 1011, 1020−21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205−06 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009). Supervisory liability may also exist without any

personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by Farmer v. Brennan, 511 U.S. 825 (1994).

As indicated above, Plaintiff does not link Defendants Ugwueze, Cryer and Lewis to any constitutional violation. Plaintiff does not adequately allege that they participated in or directed the alleged violations or implemented a deficient policy. To the extent Plaintiff suggests that Defendants Ugwueze, Cryer and Lewis engaged in a conspiracy with Defendant Kandkhorova, Plaintiff fails to adequately support this claim with any factual allegations, and does not state a claim on this basis.

A civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage. Gilbrook v. City of Westminster, 177 F.3d 839, 856 (9th Cir. 1999). "Conspiracy is not itself a constitutional tort under § 1983," and it "does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an underlying constitutional violation." Lacey v. Maricopa Cty., 693 F.3d 896, 935 (9th Cir. 2012) (en banc). For a section 1983 conspiracy claim, "an agreement or meeting of minds to violate [the plaintiff's] constitutional rights must be shown." Woodrum v. Woodward Cty., 866 F.2d 1121, 1126 (9th Cir. 1989).

Plaintiff's conspiracy claim, if any, lacks specificity. Plaintiff's suggestion of conspiracy is speculative as he presents no facts to show a meeting of the minds to violate his constitutional rights. Critically, and for the reasons stated below, Plaintiff's complaint does not establish an underlying constitutional claim to support any assertion of a conspiracy involving Defendants Ugwueze, Cryer and Lewis.

**B. Eighth Amendment**

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir.

2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,' " and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096.

A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference is a high legal standard," Simmons, 609 F.3d at 1019; Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. Jett, 439 F.3d at 1096.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105–106). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. Cty. of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

Further, a "difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012) (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082–83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122–23 (9th Cir. 2012) (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must

show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted).

Plaintiff complains that he was denied a seated walker and a referral to mental health for an assessment of whether there was a psychological component for his pain. Plaintiff's allegations are conclusory and do not adequately allege deliberate indifference to a serious medical need. At best, Plaintiff's allegations suggest a difference of opinion between Plaintiff and his treating physicians regarding the necessary accommodations for his physical condition, including referral of the mental health assessment. Further, Plaintiff's complaint does not suggest that his treating physicians failed to provide care or were otherwise indifferent to his medical needs. In fact, Plaintiff admits that he has both a walker and an assigned care giver to assist him with various tasks. Plaintiff also admits that Defendant Kandkhorova found no objective evidence to support Plaintiff's complaints of chronic pain. Moreover, even if Plaintiff's physicians negligently diagnosed or treated his condition, such conduct is not sufficient to support an Eighth Amendment claim.[1]

### C. Fourteenth Amendment – Equal Protection

As with his original complaint, Plaintiff reasserts that his Equal Protection rights were violated by Defendant Kandkhorova because he was not being treated the same as other inmates with respect to a seated walker.

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). An equal protection claim may be established by demonstrating that the defendant intentionally discriminated against the

---

[1] Although unclear, Plaintiff's allegations appear to suggest that he seeks to hold Defendants Ugwueze, Cryer and Lewis liable based on their review of an inmate appeal regarding his medical care. However, Plaintiff cannot pursue any claims against prison staff based solely on the processing and review of inmate appeals. The existence of an inmate appeals process does not create a protected liberty interest upon which Plaintiff may base a claim that he was denied a particular result or that the appeals process was deficient. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (Prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure.") (citation omitted), cert. denied, 541 U.S. 1063 (2004); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).

plaintiff on the basis of the plaintiff's membership in a protected class, such as race. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001); Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005).

Where no suspect class or fundamental right is implicated, a plaintiff's equal protection claims are subject to a rational basis review. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); United States v. Juvenile Male, 670 F.3d 999, 1009 (9th Cir. 2012); Nelson v. City of Irvine, 143 F.3d 1196, 1205 (9th Cir. 1998) ("Unless a classification trammels fundamental personal rights or implicates a suspect classification, to meet constitutional challenge the law in question needs only some rational relation to a legitimate state interest."). In the prison context, the right to equal protection is viewed through a standard of reasonableness; that is, whether the actions of prison officials are "reasonably related to legitimate penological interests." Walker v. Gomez, 370 F.3d 969, 974 (9th Cir. 2004) (citing Turner v. Safley, 482 U.S. 78, 89 (1987)).

Here, Plaintiff's allegations of discrimination based on his membership in a protected class are conclusory and speculative. That a White inmate was offered a seated walker is not sufficient to demonstrate that Defendant Kandkhorova denied Plaintiff a seated walker because of his race. Rather, Plaintiff's factual allegations show that he was denied a seated walker, in part, because there was no objective evidence to support his complaints of pain. Additionally, there is no indication that Plaintiff is or was similarly situated to other inmates that reportedly received or were offered a seated walker. Plaintiff's allegations do not demonstrate that the other inmates had the same or similar mobility or medical issues as Plaintiff. And, to the extent Plaintiff is complaining about a seat cushion and double mattress, Plaintiff's complaint fails to include any factual allegations demonstrating that his condition requires such accommodations or that other similarly situated prisoners have been provided such accommodations, but Plaintiff has not.

**IV.    Conclusion and Recommendation**

Plaintiff's complaint fails to state a cognizable claim for relief. Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the deficiencies by amendment, and thus further leave to amend is not warranted. Lopez v. Smith, 203 F.3d

10

1122, 1130 (9th Cir. 2000).

Accordingly, IT IS HEREBY RECOMMENDED that this action be dismissed for Plaintiff's failure to state a claim upon which relief may be granted.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendation, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **February 5, 2019**   /s/ Barbara A. McAuliffe
UNITED STATES MAGISTRATE JUDGE